

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-7-2006

# Asllani v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2707

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Asllani v. Atty Gen USA" (2006). *2006 Decisions.* Paper 941.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/941

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-2707

ILIRJAN ASLLANI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of a Final Decision
of the Board of Immigration Appeals
BIA No. A79 430 028
Immigration Judge: Honorable Rosalind K. Malloy

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 12, 2006

Before: BARRY, SMITH, and TASHIMA,[*] *Circuit Judges*
(Filed: June 7, 2006)

OPINION OF THE COURT

TASHIMA, *Circuit Judge.*

---

[*] The Honorable A. Wallace Tashima, Senior United States Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

Ilirjan Asllani ("Asllani"), a native and citizen of Albania, seeks review of the Board of Immigration Appeals' ("BIA") order affirming an Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons set forth below, we deny the petition for review.[1]

## I.

Asllani entered the United States with a false Italian passport on December 24, 2001, and immediately applied for asylum, withholding of removal, and protection under the CAT. Asllani claimed that he left Albania because he was being persecuted on account of his political beliefs and his membership in a particular social group – his nuclear family. Removal proceedings were promptly initiated, and on December 25, 2001, Asllani was served with a notice to appear before an IJ.

At his removal hearing, Asllani testified that he had experienced problems in Albania as a result of his membership in the Albanian Democratic Party. He testified that his father, sister, and sister's husband were all members of the

---

[1] The IJ had jurisdiction under 8 C.F.R. § 208.2(b) and the BIA exercised appellate jurisdiction over the IJ's decision under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review a final order of removal under § 242(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(1). See Wang v. Gonzales, 405 F.3d 134, 138 (3d Cir. 2005).

minority Democratic Party, and that he had suffered persecution at the hands of the majority Socialist Party.[2] In support of this claim, Asllani cited two incidents. First, Asllani claimed that he was not allowed to vote in the elections of 2000 because he was a member of the Democratic Party. However, Asllani acknowledged that he was not registered to vote and his party membership card had expired. Second, Asllani testified that on October 21, 2001, four unknown men entered his home and severely beat him. Asllani further testified, however, that he did not know why they beat him and all they said was that they would return. Asllani later concluded that they must have been motivated by their opposition to his political beliefs.

Asllani produced an Albanian police report, which was admitted into evidence, describing the October 2001 incident. The document indicated that an investigation was underway and that Asllani and his family were under police watch, but that the police could not guarantee that this event would not recur.

In addition, the IJ considered the State Department profile on Albania, dated

---

[2] Asllani explained that his political activities consisted of assisting as a campaign worker in the 2001 mayoral campaign of a local Democratic Party candidate. Although the candidate did not win, Asllani testified that she has continued her political activities. There was no testimony that the mayoral candidate, or any of her other campaign workers, have suffered persecution as a result of their political activity.

May 2001, which reported that the Democratic Party was recognized by the government and participated in most parliamentary activities. The profile also stated that the 2000 national elections were reported to be calm and orderly, and were generally free and fair. A letter from the State Department dated March 31, 2003, however, indicated that the Democratic Party did credibly report some incidents of harassment of its members in 2001 and some politically-motivated dismissals from positions with the government in 2001, but there were no such reports for 2002. The letter also indicated that the Albanian government generally respected citizens' right of association.

Asllani also sought to introduce a copy of a certification of Asllani's membership in the Democratic Party, a copy of his purported membership card, and hospital records describing the extent of his injuries stemming from the October 2001 incident. These documents, however, were excluded from evidence by the IJ because they could not be properly authenticated.

In support of his second basis for relief, Asllani testified that while in Albania he was persecuted for the criminal activities of one of his sisters. Asllani claims that this persecution resulted from his membership in a particular social group – his family. Asllani's sister had been convicted of defrauding various individuals trying to obtain visas. Asllani testified that an Albanian custom of

4

"blood feuds," meant that as the sole unmarried son, he was targeted for retribution by the families of his sister's victims. He testified that the tradition is to target the male of the family, and that he was considered the male of the family because his father was deceased and he was the only remaining unmarried male.[3]

Asllani further testified that his family and he had received threats and demand for payment from the families of his sister's victims, but did not provide any specifics regarding the nature of the threats, their severity, their frequency, or when they had been made. Asllani also explained that he did not know if the attack he suffered on October 21, 2001, was motivated by his political affiliations or by people taking revenge as a result of his sister's fraudulent activity.

The May 2001 State Department Profile on Albania noted that some clans in the northern portion of Albania still engaged in "blood feuds," and noted that the government might not be able to protect the targets of the feud in certain cases. Although Asllani characterized the threats against him as a "blood feud" directed at him to seek vengeance for his sister's crimes, Asllani also testified that he had personally assumed the legal obligation to repay his sister's victims in order to have his sister's prison term reduced from five years to six months. Asllani

---

[3] According to Asllani, his brother was not targeted because once you are married, you are no longer considered part of the family tree.

estimated that he still owes a total of $30,000 to various individuals.

After consideration of Asllani's testimony and evidence, the IJ denied Asllani's claims for relief, concluding that Asllani's testimony was not credible and that he had failed to establish sufficient evidence of past persecution, or a likelihood of future persecution. On appeal, the BIA affirmed the IJ's decision only "insofar as she found that the respondent had not satisfied the applicable burden of proof for the requested forms of relief." The BIA noted that "[e]ven if credible, [Asllani] failed on this record to establish past persecution or a well-found fear of future persecution." Asllani now appeals from the BIA's decision affirming the IJ.

## II.

"[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). "We must uphold the BIA's factual findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Lie v. Ashcroft, 396 F.3d 530, 534 n.3 (3d Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 480 (1992)). "A determination of whether an asylum applicant has suffered from 'persecution' or whether that individual has a 'well-founded fear of

6

persecution' is factual and thus is entitled to deference." Wang, 405 F.3d at 138 (citation omitted).

## III.

The framework under which we review administrative determinations is well established. Section 208(a) of the INA, 8 U.S.C. § 1158(b), provides the Attorney General with discretion to grant asylum to a "refugee," with certain exceptions. In general, a "refugee" is "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A); 8 U.S.C. § 1101(a)(42)(A). An applicant has the burden to establish that he fits within this definition of refugee. 8 C.F.R. § 1208.13(a).

An applicant may establish his refugee status by showing either that he has been subject to past persecution or has a well-founded fear of future persecution. See He Chun Chen, 376 F.3d at 223-24. The persecution, however, must be "on account of" one of the five statutory bases. 8 C.F.R. § 1208.13(b). The Supreme Court, in Elias-Zacarias, held that while an asylum-seeker would not "be expected to provide direct proof of his persecutors' motives," nevertheless, since the statute

7

makes motive critical, he must provide *some* evidence of motive, direct or circumstantial. Elias-Zacarias, 502 U.S. at 483-84. In addition, in order to obtain reversal of the BIA's determination, the asylum-seeker must show that the evidence he presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. Id.

While the decision to grant or deny an applicant asylum is discretionary, "the Attorney General must grant withholding of removal if the alien demonstrates a 'clear probability' that, upon return to his or her home country, his or her 'life or freedom would be threatened' on account of race, religion, nationality, membership in a particular social group, or political opinion." He Chun Chen, 376 F.3d at 223 (citation omitted). "An alien who fails to establish that he or she has a well-founded fear of persecution, so as to be eligible for a grant of asylum, necessarily will fail to establish the right to withholding of removal." Id.

Under the CAT, an applicant is entitled to withholding of removal if he establishes that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The regulation defines torture as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" by a public official for certain purposes. 8 C.F.R. § 1208.18(a)(1).

## A.

Asllani argues that the IJ improperly excluded several documents from evidence that would have corroborated his testimony as to his claim of persecution. The documents included a membership certificate for the Democratic Party, a purported membership card, and hospital records demonstrating that Asllani was attacked on October 21, 2001. Asllani contends that the exclusion of these documents, and the IJ's corresponding decision not to consider them in assessing Asllani's credibility, was a violation of his due process right to a fair hearing.

Asllani's arguments, however, are unavailing. Even crediting Asllani's testimony and evidence, Asllani nonetheless failed to meet his burden of demonstrating that he was persecuted *on account of* a statutorily-protected ground because he was unable to tie any alleged persecution to his political beliefs. See Part III(B), infra. In fact, both the IJ's and the BIA's reasoning turned on the fact that Asllani was unable to demonstrate that any of the violence or harassment he suffered was a result of his political affiliations, and not on a lack of corroborating evidence.

Moreover, the possibility that the IJ may not have credited Asllani's testimony is rendered moot by the BIA's opinion, in which it affirmed the IJ even

assuming the credibility of Asslani's testimony. See He Chun Chen, 376 F.3d at 226 (explaining that remand to the BIA is inappropriate where excluded documents did not affect the facts and evidence upon which an agency's decision is based). Accordingly, because Asllani failed to demonstrate that any persecution he suffered was on account of his political beliefs, and because the BIA credited Asllani's testimony thus rendering his argument moot, we reject this argument.

**B.**

Asllani argues that the adverse findings of the BIA and the IJ are not supported by substantial evidence because (1) the IJ's adverse credibility finding was erroneous, and (2) he satisfied his burden of establishing that he suffered persecution on account of his political beliefs and because of his membership in a particular social group.

Insofar as Asllani argues that the IJ's adverse credibility finding warrants reversal, his claim is moot. As discussed in Part III(A), supra, the BIA credited Asllani's testimony and affirmed the IJ's decision on the ground that Asllani failed to satisfy the applicable burden of proof. Therefore, because the BIA's decision was not based on the IJ's adverse credibility finding, we reject this argument.

Asllani's argument that he suffered persecution on account of his political beliefs finds little support in the record. The only evidence Asllani offered with

regards to the alleged persecution on account of his political beliefs was testimony that he was prevented from voting in the 2000 election, and testimony regarding an incident where four unknown assailants attacked him in his home. However, Asllani is unable to carry his burden of demonstrating that these incidents were "on account of" his political views. See Lie, 396 F.3d at 535 (finding that petitioner's testimony regarding a robbery in which his attackers used an ethnic slur insufficient evidence of persecution on account of petitioner's political views or nationality).

Asllani's testimony demonstrates that the voting incident was likely a result of Asllani's failure to register in his particular district, and the fact that he was attempting to use an expired voter ID card. In addition, with regards to the assault, Asllani testified that the attackers made no mention of why they attacked him, nor did he have any way of knowing whether the assault was motivated by the attackers' disagreement with his political beliefs. Finally, there was no testimony regarding any alleged persecution of any of Asllani's family members, or other campaign workers, who were also members of the Democratic Party. Based on these facts, there is substantial evidence to support the BIA's and the IJ's decisions. Accordingly, we reject this argument because Asllani has failed to demonstrate that the evidence he presented was strong enough to compel a

contrary conclusion. See Elias-Zacarias, 502 U.S. at 483-84 (explaining that in order to obtain reversal of the BIA's determination, an asylum-seeker must show that the evidence he presented was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution); Wang, 405 F.3d at 138 ("Congress has directed us to treat the BIA's findings of fact as conclusive 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" (citations omitted)).

Asllani also argues that he has suffered persecution on account of his membership in a particular social group – his family. This argument, however, also finds little support in the record. Although Asllani alleges that he has been the target of a "blood feud" as a result of his sister's fraudulent activity, Asllani's testimony does not establish any evidence of persecution. At best, Asllani's testimony indicates that the October 21, 2001 attack *may* have been motivated by the alleged "blood feud." However, Asllani has testified that he did not know his attackers, and that he did not know why they attacked him. The only other evidence Asllani offered regarding alleged persecution on account of his membership in his family was that he and his family had received threats and demand for payment from the families of his sisters' victims. However, Asllani did not provide any specifics regarding the nature of the threats, their severity,

12

their frequency, or when they had been made, and therefore failed to carry his burden of demonstrating that he was persecuted. See Li v. Attorney Gen. of U.S., 400 F.3d 157, 167 (3d Cir. 2005) (defining persecution as "'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom'" (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993))). Accordingly, because the IJ's and BIA's factual determinations were supported by substantial evidence, and Asllani has failed to meet his burden of establishing that the evidence compels a finding that he was persecuted, or has a well-founded fear of future persecution, see Elias-Zacarias, 502 U.S. at 483-84, we reject this argument.

## C.

Because Asllani has failed to meet his burden to establish eligibility for asylum, he also necessarily fails to satisfy the higher standard required for withholding of removal. See He Chun Chen, 376 F.3d at 223. In addition, Asllani has not established that "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal," as required for relief under the CAT. 8 C.F.R. § 1208.16(c)(2). While there is evidence that Asllani owes several individuals money, there is no evidence in the record to indicate that it is more likely than not that Asllani would be tortured if he returned to Albania.

13

**IV**.

For the foregoing reasons, Asslani's petition for review is **DENIED.**