NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2659
_____

ILIRJAN ASLLANI
                    Petitioner
                        v.

ATTORNEY GENERAL OF THE UNITED STATES,
                  Respondent.


_____


On Petition for Review from an Order
of the Board of Immigration Appeals
(A No. A079 430 028)
Immigration Judge:  Rosalind K. Malloy
_____


Submitted Under Third Circuit LAR 34.1(a)
February 10, 2012
_____


Before: SLOVITER and VANASKIE, <u>Circuit Judges</u>, and POLLAK, <u>District Judge</u>[*]

(Opinion filed: March 8, 2012)
_____

OPINION
_____

---

[*] Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

1

POLLAK, *District Judge*.

Ilirjan Asllani petitions for review of the Board of Immigration Appeals' ("BIA")

order of May 24, 2011, reiterating its previous denial of Asllani's motion to reopen his

removal proceedings. For the reasons given below, Asllani's petition will be denied.

## I.

The parties are familiar with the lengthy history of this case, and we therefore

provide only a brief summary here. Asllani, a native and citizen of Albania, arrived in

the United States by air at Miami on or about December 24, 2001. At the Miami airport,

he requested entry under the Visa Waiver Pilot Program using an Italian passport in

which Asllani's photograph had been substituted for that of the person to whom the

passport was issued. After Asllani requested the opportunity to apply for asylum, he was

paroled into the United States and referred to an immigration judge ("IJ") for "asylum-

only" proceedings.[1]

On November 19, 2002, Asllani submitted to the IJ an application for asylum,

withholding of removal, and relief from removal under the U.N. Convention Against

Torture ("CAT"). In his application, Asllani claimed that he feared persecution based on

his membership in the Democratic Party and his membership in a particular social group.

Only the social group claim is relevant to the present petition. That claim was based on

Asllani's stated fear that individuals who were victims of a fraud scheme perpetrated by

---

[1] "Asylum-only" proceedings is a misnomer. Individuals in these proceedings may apply for withholding of removal and relief under the CAT as well as asylum. *See* 8 C.F.R. § 208.2(c); *cf. Shehu v. Att'y Gen.*, 482 F.3d 652, 654 (3d Cir. 2007) (reviewing applications for asylum, withholding, and CAT relief filed by an individual in asylum-only proceedings).

Asllani's sister—for which his sister was arrested and, on January 31, 2001, convicted—would take vengeance on Asllani as a member of his sister's family. In an affidavit submitted in support of his application, Asllani stated that his family had received death threats because they could not repay his sister's victims, and that the family had reported these threats to the police, who were unwilling to take any action to protect the family.

On September 17, 2003, the IJ denied Asllani's applications for asylum, withholding of removal, and relief under the CAT. The IJ concluded, in pertinent part, that Asllani had failed to establish that he suffered past persecution, or that he had a well-founded fear of future persecution, on account of his membership in a particular social group, and that he likewise had failed to establish that he would be tortured should he return to Albania.

Asllani appealed to the BIA, which, on April 28, 2005, adopted and affirmed the IJ's decision, "insofar as [the IJ] found that the respondent had not satisfied the applicable burden of proof for the requested forms of relief." Asllani then filed a petition for review in this court. While his petition for review was pending, Asllani filed a motion with the BIA to reconsider its April 28, 2005, decision. The BIA denied that motion in an order dated July 18, 2005. Asllani then filed a motion to reopen his proceedings before the BIA, emphasizing that his wife had been granted asylum and, on November 12, 2003, had applied for adjustment of status to permanent residence. On October 18, 2005, the BIA denied that motion as well. On June 7, 2006, a panel of this court denied Asllani's petition for review of the BIA's April 28, 2005, decision, concluding, in relevant part, that Asllani had failed to demonstrate that he was persecuted on account of

3

his membership in a particular social group because he "did not provide any specifics regarding the nature of the threats, their severity, their frequency, or when they were made." *See Asllani v. Att'y Gen.*, 184 F. App'x 166, 172 (3d Cir. 2006).

Over four years later, Asllani, having been detained by U.S. Immigration and Customs Enforcement, filed a second motion to reopen with the BIA. This time, Asllani argued that the country conditions in Albania had changed with regard to his particular social group claim. In support of his motion, Asllani filed a declaration by Brian Williams, an associate professor of Islamic Studies at the University of Massachusetts, and several articles about the tradition of gjakmarrja—or "blood feud"—in Albania. Asllani also filed two letters, purportedly issued by the Tirana, Albania, police, documenting that Asllani's mother had reported "life threatening phone calls for her and her family from an unknown person" in January and April of 2010. The BIA denied Asllani's second motion to reopen on July 9, 2010, concluding that Asllani had not "identified any changed circumstances in Albania that would have excepted his motion from the applicable time and numerical limitations." The BIA reasoned,

> First, the information relating to the "blood feud" in which his family is allegedly involved does not sufficiently demonstrate a change in country conditions. Rather, it describes a continuance of the on-going and often violent circumstances that gave rise to [his] first claim, a claim that was previously denied by both the Immigration Judge and the Board. Second, [Asllani] has not shown that the information relating to the phone calls that his mother allegedly received from "unidentified" persons is sufficiently material to his claim to warrant a remand. . . . Significantly, such evidence alone does not sufficiently demonstrate that the applicant would be targeted for harm rising to the level of persecution on account of a protected ground upon his return to Albania.

4

Asllani petitioned for review of the BIA's July 9, 2010, decision. In lieu of filing a reply brief, the government moved to remand the matter to the BIA to clarify whether the prior immigration court proceedings were asylum-only proceedings or removal proceedings. Asllani objected that remand would have no effect other than to delay the appellate proceedings, since it was undisputed that the prior proceedings had been asylum-only proceedings. A motions panel granted the government's motion, stating, in doing so, that it did not retain jurisdiction over Asllani's petition for review. On May 24, 2011, the BIA issued a decision clarifying that Asllani had been in asylum-only proceedings. The BIA's May 24, 2011, decision noted that Asllani "remains ineligible for relief from and subject to removal."

Asllani then filed the petition for review of the BIA's May 24, 2011, decision that is presently under consideration.[2]

**II.**

Under 8 U.S.C. § 1252(a)(1), we have jurisdiction to review the denial of a motion to reopen a final order of removal. *Cruz v. Att'y Gen.*, 452 F.3d 240, 246 (3d Cir. 2006). This court has held that a denial of a Visa Waiver Program applicant's petitions for asylum, withholding of removal, and relief under the CAT constitutes a final order of removal. *Shehu v. Att'y Gen.*, 482 F.3d 652, 656 (3d Cir. 2007). Although, on its face, the BIA's May 24, 2011, decision only determined that Asllani was in asylum-only proceedings, the decision, in effect, reiterated the BIA's July 9, 2010, decision denying

_____

[2] Before filing the present petition for review, Asllani filed a motion in this court to reinstate his petition for review of the BIA's July 9, 2010, decision. A motions panel denied this motion on July 8, 2011.

Asllani's second motion to reopen. Therefore, the May 24, 2011, decision was a final order denying Asllani's motion to reopen, and hence it is subject to review by this court.[3]

We review a BIA denial of a motion to reopen for abuse of discretion. *Pllumi v. Att'y Gen.*, 642 F.3d 155, 158 (3d Cir. 2011). The BIA abuses its discretion when it acts in a manner that is "arbitrary, irrational, or contrary to the law." *Id.* (internal citation and quotation marks omitted). Questions of law are reviewed *de novo*. *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153-54 (3d Cir. 2007).

Asllani first contends that the BIA abused its discretion by failing to adequately consider the evidence of changed circumstances he offered in support of his second motion to reopen. The BIA must give "reasoned consideration" to evidence of changed country conditions, but "it may do so in summary fashion without a reviewing court presuming that it has abused its discretion." *Zheng v. Att'y Gen.*, 549 F.3d. 260, 268 (3d Cir. 2008) (internal quotation marks and citation omitted). The BIA's discussion of the documents Asllani submitted in support of his motion to reopen, although not particularly detailed, demonstrates that it gave the documents reasoned consideration. That is all that is required.[4]

---

[3] Portions of Asllani's brief appear to raise challenges to the IJ's decision and the BIA's April 28, 2005, affirmance of that decision. These decisions are outside the scope of the present petition, and we do not review them. *See* 8 U.S.C. § 1252(b)(1).

[4] Asllani makes the related argument that the BIA erred in failing to adequately consider whether it should reopen his proceedings so that he could pursue his CAT claim. In contrast to an applicant for asylum or withholding of removal, "an alien seeking relief under the CAT need not establish that he/she is a 'refugee' and therefore need not establish that torture is inflicted 'on account of' any protected status." *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 64 (3d Cir. 2007). The BIA did not, however, base its denial of

Asllani next argues that the BIA erred in concluding that he had not identified changed country conditions in Albania that would have excepted his motion to reopen from the otherwise applicable time and numerical limitations. *See* 8 U.S.C. § 1229a(c)(7) (permitting only one motion to reopen, which must be filed within 90 days of the final administrative decision). To overcome these limitations, Asllani had to demonstrate "changed country conditions arising in [his] country of nationality," by submitting new evidence that was "material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii).

The documentary evidence Asllani submitted with his motion to reopen does not demonstrate that Asllani would now be at a greater risk of persecution or torture in Albania than he was on April 28, 2005, when the BIA issued its decision affirming the IJ's denial of Asllani's applications for relief. Taken together, the articles that Asllani submitted in support of his motion to reopen show fluctuations in the prevalence of gjakmarrja-related killings in 2007 and 2008, and an increase in gjakmarrja-related violence since the collapse of the communist regime in the early 1990s. In his declaration submitted in support of Asllani's motion, Professor Williams stated that gjakmarrja-related killings have increased since 2008. These documents do not demonstrate that the risk of persecution or torture for gjakmarrja targets has increased since 2005, and, more importantly, they do not show that Asllani himself would now face

Asllani's second motion to reopen on a conclusion that he failed to establish that he would be harmed on account of a protected ground. Rather, it determined that Asllani did not demonstrate changed country conditions. This determination was dispositive of Asllani's motion to reopen as to all of his claims; therefore, independent consideration of Asllani's CAT claim was unnecessary.

a greater risk of persecution or torture based on a purported gjakmarrja that is over a decade old.  The letters documenting that Asllani's mother reported threatening phone calls to the police in 2010 likewise demonstrate a continuation of the conditions that formed the basis of Asllani's original application for relief:  in his November 19, 2002, application for asylum, withholding of removal and CAT relief, Asllani asserted that his family members had received death threats as a result of the family's inability to pay back Asllani's sister's victims.  Because Asllani's new evidence does not demonstrate changed country conditions that are material to Asllani's applications for relief, the BIA did not abuse its discretion in denying Asllani's second motion to reopen.[5]

## III.

For the reasons stated above, we will deny Asllani's petition for review.

---

[5] It appears from the record before us that Asllani has been present in the United States for over ten years and, for the last eight of those years, has been married to Marsida Bejita, who was granted asylum in the United States and is now a lawful permanent resident, and that Asllani and his wife have a six-year-old daughter who was born in the United States.  The grant of asylum in the United States obviously signifies that it would be not unlikely that Asllani's wife would face persecution in Albania were she to return there with Asllani upon his removal.  Nothing in the record suggests that Asllani has any criminal convictions.  While these factors are irrelevant to the legal issues before us, they would seem to bear on the government's consideration whether the continued prosecution of Asllani's case is consistent with its enforcement priorities as outlined in ICE Director John Morton's June 17, 2011 memorandum, *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens*.  *See* Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, to All Field Office Directors, et al.