Irawaty BANGURADJA; Maurits
Banguradja, Petitioners

v.

**ATTORNEY GENERAL OF
the UNITED STATES,**
Respondent.

No. 06–3568.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) March 6, 2008.

Filed: April 2, 2008.

Joseph C. Hohenstein, Orlow & Orlow, Philadelphia, PA, for Petitioners.

Richard M. Evans, Carl H. McIntyre, Jr., David E. Dauenheimer, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: FISHER, GREENBERG and ROTH, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Irawaty Banguradja and her husband, Maurits Banguradja, seek review of the final decision of the Board of Immigration Appeals ("BIA") ordering their removal from the United States.[1] Ms. Banguradja appeals the BIA's denial of her applications for asylum and withholding of removal.[2] For the reasons set forth below, we will deny the petition.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Ms. Banguradja is an ethnic Indonesian and a Christian who entered the United States on a visitor's visa on July 3, 2001. On or about July 2, 2002, she filed applications for asylum, withholding of removal, and relief under the CAT. On October 29, 2002, the former Immigration and Naturalization Service sent her a Notice to Appear, placing her in removal proceedings. At her removal hearing, Ms. Banguradja presented evidence to the immigration judge ("IJ") concerning her alleged persecution by Muslims in Indonesia. She testified that Muslims harassed her on ten to fifteen occasions while she rode the bus to church, and at times, men had touched her buttocks and lifted her skirt. She also alleged that an individual chased her with an axe during a riot. She further testified that, following her father's conversion from Islam to Christianity, her father's family physically harmed and threatened to kill her and her family.

On December 8, 2004, the IJ denied Ms. Banguradja's applications for asylum, withholding of removal, and protection under the CAT, finding that she was not credible, and her claim was frivolous. The BIA reversed the IJ's finding that her application was frivolous. It presumed that she was credible without reversing the IJ's finding, but affirmed the denial of her applications. This timely petition for review followed.

### II.

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's decision, and "do not review the IJ's decision in its own right," but to the extent that the BIA adopted the IJ's decision, we review the decisions of both the BIA and the IJ. *Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir.2007). Our standard of review is the deferential "substantial evidence" standard, and we will uphold the findings if

---

1. Ms. Banguradja applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"); her husband did not. Thus, Mr. Banguradja's right to remain in the United States is derivative of his wife's claim. *See* 8 U.S.C. § 1158(b)(3)(A). When her claim was denied, he was ordered to be removed as well.

2. Although the BIA also denied Ms. Banguradja's application for relief under the CAT, she did not petition for review of this claim, and thus, we will not address it.

they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS,* 143 F.3d 157, 161 (3d Cir.1998) (internal quotation marks and citation omitted). Moreover, "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft,* 242 F.3d 477, 483–84 (3d Cir.2001).

### III.

Ms. Banguradja petitions for review of the BIA's denial of her application for asylum.[3] An alien is eligible to receive a discretionary grant of asylum under the Immigration and Nationality Act ("INA") if he demonstrates that he is a refugee. 8 U.S.C. § 1158(b)(1)(A)-(B). A refugee is an alien who is "unable or unwilling to return to ... [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42). To establish past persecution, "an applicant must show (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002) (internal quotation marks and citation omitted). To demonstrate a well-founded fear of future persecution, an applicant must show that "she has a genuine fear, and that a reasonable person in her circumstances would fear

persecution if returned to her native country." *Id.*

Substantial evidence supports the BIA's decision that Ms. Banguradja did not establish that she had been persecuted in Indonesia. The incidents Ms. Banguradja described, which included being harassed while riding the bus to church and being chased during a riot by an individual with an axe, while unfortunate, do not rise to the level of "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993); *see also Lie v. Ashcroft,* 396 F.3d 530, 536 (3d Cir.2005) (holding that isolated, criminal acts do not rise to the necessary level of persecution). Additionally, Ms. Banguradja did not provide any evidence that the Indonesian government committed any of these acts or is "unable or unwilling to control" the acts. *See Lie,* 396 F.3d at 536–37 (internal quotation marks and citation omitted).

 Substantial evidence also supports the BIA's decision that Ms. Banguradja did not establish a well-founded fear of persecution. Ms. Banguradja's parents and siblings continue to live in Indonesia, diminishing the reasonableness of her fears of returning to Indonesia. *See id.* at 537. Additionally, the evidence in the record did not demonstrate that there is a pattern or practice of persecution of Christians in Indonesia. *See id.* at 536–37. For these reasons, substantial evidence supports the BIA's conclusion that Ms. Banguradja is not a refugee qualifying for asylum.

---

**3.** Ms. Banguradja argues that the BIA erred in not determining whether she was credible. However, we have adopted a different approach to resolve such a situation. Where the BIA has "not adopt[ed] or defer[red] to the IJ's finding on credibility, we must proceed as if [petitioner's] testimony were credible and determine whether the BIA's decision is supported by substantial evidence in the face of

[her] assumed (but not determined) credibility." *Singh–Kaur v. Ashcroft,* 385 F.3d 293, 302 (3d Cir.2004) (internal quotation marks and citation omitted). Thus, Ms. Banguradja essentially prevails in that argument as we must assume that she provided credible testimony to the IJ, and determine if substantial evidence supports the BIA's decision.

Ms. Banguradja also petitions for review of the BIA's denial of her application for withholding of removal. However, as substantial evidence supported the BIA's denial of asylum, it necessarily supports the BIA's denial of withholding of removal, which has a higher standard of proof than asylum.[4] *See Shardar v. Ashcroft*, 382 F.3d 318, 324 (3d Cir.2004).

## IV.

Ms. Banguradja further contends that the IJ's manner "infect[ed] the fundamental fairness of these proceedings." While it is not clear that she has properly exhausted her administrative remedies as required by 8 U.S.C. § 1252(d)(1), even assuming that she did, we agree with the BIA that the IJ's conduct "did not rise to the level of rendering the hearing unfair."

We review *de novo* whether an IJ's bias resulted in a violation of an alien's due process rights. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595–96 (3d Cir.2003). In the immigration context, "due process requires that aliens threatened with deportation are provided the right to a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf." *Id.* at 596 (internal quotation marks and citation omitted). An IJ's statements and behavior while conducting a hearing may rise to the level of a due process violation where the IJ insults and belittles a petitioner. *See Wang v. Att'y Gen.*, 423 F.3d 260, 265–69 (3d Cir.2005). However, mere discourtesy on the part of an IJ is insufficient to constitute a due process violation. *See Abdulrahman*, 330 F.3d at 597. In the present case, although the IJ appeared to be annoyed during some of the proceedings and, as the BIA stated, was "acerbic and impatient," it did not rise to the level of a due process violation.[5]

## V.

For the reasons set forth above, we will deny the petition for review.

---

4. Pursuant to the INA, the Attorney General may not remove an alien to her country of origin if it would be more likely than not that her "life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see also Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir.2003).

5. To the extent that Ms. Banguradja argues that the IJ's conduct prevented her from introducing additional evidence, her argument is unavailing. She cannot demonstrate that the failure to present this evidence affected the outcome of her case because substantial evidence supported the IJ's determination. *See Cham v. Att'y Gen.*, 445 F.3d 683, 693–94 (3d Cir.2006).