

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2008

# Wong v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2118

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wong v. Atty Gen USA" (2008). *2008 Decisions.* Paper 832.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/832

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2118
_____

HARRY WIBOW WONG;
INGGRID LIADI LIE; FERY WIBOWO WONG;
TONY WIBOWO; ARDY SUWONGSO WONG,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA Nos. A96-264-097/098/099/100/101
(U.S. Immigration Judge:  Honorable Donald Vincent Ferlise)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 9, 2008
Before:  SCIRICA, <u>Chief Judge</u>, CHAGARES and ALDISERT, <u>Circuit Judges</u>.

(Filed: July 17, 2008)
_____

OPINION OF THE COURT
_____

<u>PER CURIAM</u>.

Petitioner Harry Wibow Wong, his wife and three children, all natives and ethnic

Chinese citizens of Indonesia, filed a timely petition for review of the BIA's decision

dismissing their appeal of the immigration judge's denial of their application for asylum, for withholding of removal and relief under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition for review.

The Wong family entered the country as visitors with B-2 visas at different times in 2001 and 2002. Wong's wife, Inggrid Liadi Lie, and their eldest son, Fery Wibowo Wong, entered the United States in July 2001. Harry Wong followed, arriving in the United States in October 2001. In July 2002, before his visa expired, Wong traveled to Indonesia and returned to the United States with his two youngest sons. After his and his family's visas had expired, Wong filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] On May 13, 2003, the Department of Homeland Security issued Notices to Appear charging petitioners with being subject to removal under the Immigration and Nationality Act § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States beyond the authorized period.

In support of his application for asylum, withholding of removal and protection under CAT, Wong claimed that he and his family were persecuted in the past and have a

---

[1] Petitioner Wong named his wife, Inggrid Liadi Lie, and three children, Fery Wibowo Wong, Tony Wibowo, and Ardy Suwongso Wong, as derivative of his asylum claim. Wong's original asylum application naming his wife and children may be deemed an asylum application as to all respondents. See 8 C.F.R. § 1208.3(a). Wong's wife and children filed separate applications for withholding from removal and for protection under the CAT.

fear of future persecution in Indonesia on the basis of their Chinese ethnicity and Buddhist religion. According to Wong's testimony, he and his wife were born in the village of Ujung Pandang on the island of Sulawesi. They sought to leave Indonesia with their children because the Muslim people there hate ethnic Chinese Buddhists. Wong testified to three incidents that convinced him that they had to leave. In 1995, when the family lived in Surabaya, Java, unknown adult ethnic Indonesians beat his son up on his way home from school and stole his new bike. Wong reported the incident to the police, who did nothing. In 1997, riots broke out on Sulawesi island. Many buildings in the city were destroyed by fire, including two temples, one of which was the Buddhist Temple that the Wong family attended. Two Chinese Indonesians died inside a burning house set afire by gangs of Indonesian Muslims. Wong and his family were not personally involved in the riots, however, because they were not visiting the island at the time. The last incident occurred in July 2000. Wong and his wife were driving their car through a Muslim area in Surabaya. When they came to a stop at a red light, three or four Muslim Indonesians jumped on the car, threatened Wong with a knife placed at his throat, and stole his cell phone and wallet. He did not report the incident to the police because he thought it would be useless. Wong testified that he feared that he and his family would be arrested and possibly murdered if they returned to Indonesia.

On cross-examination, Wong testified that nothing happened to him in the five-month period between the time he received his B-2 visa (in May 2001) and when he came

3

to the United States (in October 2001). Nor did he experience any problems when he returned to Indonesia for five months in July 2002 to bring his two children back to the United States. Both he and his wife have family living on Sulawesi island in Indonesia. According to Wong, none of these family members reported any recent problems living there based on their ethnicity or religion.

On September 16, 2005, following a hearing, the Immigration Judge (IJ) denied petitioners' applications for relief and ordered them removed. The IJ concluded that, although Wong was credible, he had not proven any past persecution or the clear probability of future persecution. Specifically, the IJ found that there was no evidence that the robberies of the child's bike in 1995 or of Petitioner Wong's wallet and other valuables by unknown assailants in 2000, were motivated by ethnicity or religion. But the IJ also concluded that, even if the incidents were ethnically or religiously motivated, they were not sufficiently severe to rise to the level of persecution. The IJ also found that the Wongs did not have a well-founded fear of future persecution because they still had family in Indonesia who have not been harmed. The IJ determined that the Wongs failed to prove a pattern or practice of persecution of Chinese Buddhists by the Indonesian government. Accordingly, the IJ denied Wong's asylum application and his family's derivative application. The IJ also denied withholding of removal and CAT relief; he noted that Wong did not seek voluntary departure.

4

Petitioners appealed. On March 23, 2007, the BIA adopted and affirmed the IJ's decision and dismissed the appeal. The BIA rejected Wong's claim that the IJ had not afforded him an opportunity for a fair hearing, noting that the IJ was acting within his authority to examine and cross-examine aliens or other witnesses at a hearing. The IJ in Wong's proceeding did not prejudice the outcome of the hearing and, thus, did not deny Wong due process. The BIA concluded that Wong failed to show past persecution or that it was more likely than not that he would face persecution or torture upon his return to Indonesia. Petitioners timely appealed.

We have jurisdiction to review final orders of the BIA under section 2424(a)(1) of the INA, 8 U.S.C. § 1252(a)(1). Where, as here, the BIA expressly adopts the IJ's decision and reasoning pursuant to Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994), we review the decisions of both the IJ and the BIA to determine whether the BIA's decision to defer to the IJ was appropriate. Shehu v. Gonzales, 482 F.3d 652, 657 (3d Cir. 2007). We review the factual findings of the IJ, including adverse credibility findings, for substantial evidence. Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003). We will uphold the findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We should find substantial evidence lacking only where the evidence "was so compelling that no reasonable factfinder could fail to find the alien eligible for asylum or withholding of removal." Id. at 483-84; see also 8 U.S.C. § 1252(b)(4)(B).

5

To establish "past persecution" and entitlement to asylum, Wong must show: (1) an incident, or incidents, that constituted persecution; (2) that occurred on account of one of the statutorily-protected grounds (i.e., race, religion, nationality, membership in a particular social group, or political opinion); and which (3) were committed by the government or forces the government is either unable or unwilling to control. Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004). Our controlling definition of persecution is a narrow one– it includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). Thus, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin, 12 F.3d at 1240.

The Attorney General must grant withholding of removal if he "decides that the alien's life or freedom would be threatened" in the country of removal "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of proving that he will more likely than not face persecution on account of a protected ground. See INS v. Stevic, 467 U.S. 407, 429-30 (1984). "To meet this test, the alien must demonstrate that there is a greater-than-fifty-percent chance of persecution upon his or her return." Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998). If the alien can demonstrate past persecution, that finding will raise a rebuttable presumption that the alien's "life or freedom would be threatened in the future . . . ." 8 C.F.R. § 1208.16(b)(1)(i). An

6

applicant who has not suffered past persecution may demonstrate that his or her life or freedom would be threatened in the future if the applicant establishes that there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.16(b)(2)(i). To qualify as a "pattern or practice," the persecution must be "systemic, pervasive, or organized." Lie v. Aschcroft, 396 F.3d 530, 537 (3d Cir. 2005).

To prevail on a CAT claim, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). See also Toure v. Attorney General of the United States, 443 F.3d 310, 317 (3d Cir. 2006).

Wong challenges the IJ's denial of his asylum application, claiming, among other things, that the totality of the evidence, including the 2004 International Religious Freedom Report and his credible testimony, was sufficient to establish that he and his family suffered past persecution. Appellant's Br. at 8-12. The BIA's conclusion that petitioners failed to establish past persecution is supported by substantial evidence in the record. On appeal, petitioners claim that they suffered past persecution because they were harassed, they were robbed, and other ethnic Chinese homes and businesses were destroyed during a riot in 1997. Although the harm described by petitioners is unfortunate, it does not constitute past persecution. See Lie, 396 F.3d at 536 (holding that

7

an ethnic Chinese Indonesian's account of two isolated criminal acts by unknown assailants, which resulted only in the theft of some personal property and a minor injury, was not sufficiently severe to constitute persecution); Konan v. Attorney General, 432 F.3d 497, 506 (3d Cir. 2005) (generalized lawlessness and violence between diverse populations is generally insufficient to show past persecution); Fatin,12 F.3d at 1243 ("persecution is an extreme concept that does not include every sort of treatment our society regards as offensive.").

Petitioners also failed to demonstrate that they would more likely than not face persecution on account of their Chinese ethnicity and Buddhist religion upon their return to Indonesia. The record does not show that the treatment of ethnic Chinese Buddhists in Indonesia is the result of government action or acquiescence, or that it constitutes a pattern or practice of persecution. The Wongs failed to adduce evidence that would have warranted a contrary conclusion in this case. Indeed, Wong himself returned to Indonesia without incident for a five-month period in July 2002, and members of his and his wife's families continue to live in Indonesia without incident. These facts tend to lessen the likelihood that Wong or his family would be singled out for persecution if they returned to Indonesia. See Toure, 443 F.3d at 319 (citing Hakeem v. INS, 273 F.3d 812, 816 (9th Cir. 2001)). Moreover, the 2004 Country Report indicated that instances of discrimination and harassment of ethnic Chinese had declined compared with previous years.

8

Petitioners' argument that their due process rights were violated because the IJ failed to review the entire record, based his denial of their claims upon mere speculation, and made little more than a cursory evaluation of their claims, is without merit. The IJ's opinion evidences its consideration of the individual circumstances of the petitioners' applications. See Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir. 2001).

Finally, with respect to their CAT claim, petitioners have failed to demonstrate that they are likely to be tortured by, or with the acquiescence of, government officials if removed to Indonesia. See 8 C.F.R. §§ 1208.16(c),1208.18(a).

For the foregoing reasons, we will deny the petition for review.