**IMG-118**                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3055
_____

ADNAN MORINA, a/k/a ABENE MORINA,

                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES


_____

No. 09-3057
_____

ADEM MORINA,

                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES


_____

No. 10-1854
_____

ADNAN MORINA, a/k/a ABENE MORINA; ADEM MORINA,

                                        Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES


1

_____

On Petitions for Review of Orders of the
Board of Immigration Appeals
(Agency Nos. A097-391-119 & A097-457-942)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 20, 2011
Before:  AMBRO, GREENAWAY, JR. AND GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 11, 2011)

_____

OPINION
_____

PER CURIAM

Cousins Adnan and Adem Morina petition for review of the Board of Immigration

Appeals' ("BIA") decisions upholding the Immigration Judge's ("IJ") denial of their

respective applications for asylum, withholding of removal, and relief under the

Convention Against Torture ("CAT").  Petitioners also seek review of the BIA's

subsequent decision denying their joint motion to reconsider.  For the reasons that follow,

we will deny the petitions.

I.

Petitioners are ethnic Albanians from Kosovo.  In September 2003, Adem[1] entered

_____

[1] We mean no disrespect when we refer to Petitioners by their first names; we do

2

the United States with a fraudulent passport and sought admission under the Visa Waiver Program ("VWP").[2]  After that request was denied, he applied for asylum, withholding of removal, and CAT relief, and was placed in asylum-only proceedings.  Meanwhile, in February 2004, Adnan entered the United States without being admitted or paroled.  He subsequently was placed in removal proceedings, where he conceded his removability and applied for asylum, withholding of removal, and CAT relief.

Petitioners claimed that they feared returning to Kosovo because Albanian extremists with ties to the Alliance for the Future of Kosovo ("AAK") had persecuted them on account of their membership in the Democratic League of Kosovo ("LDK"), a rival political party.  Their respective cases were ultimately consolidated before the IJ, who heard their testimony over the course of several hearings between December 2004 and August 2006.

Petitioners testified as follows.  In 1998, they and their family fled Kosovo in the wake of mistreatment by the Serbian government and its armed forces.[3]  After NATO

---

so solely for ease of identification.

[2] Under the VWP, aliens from certain countries are permitted to visit the United States for 90 days or less without a visa.  See 8 U.S.C. § 1187(a).  Aliens who request admission under the VWP agree to waive any challenge to their removal; however, they may still apply for asylum, withholding of removal, and CAT relief. Shehu v. Att'y Gen. of the U.S., 482 F.3d 652, 655 (3d Cir. 2007) (citing 8 U.S.C. § 1187(b)).  VWP applicants who apply for asylum, withholding of removal, and/or CAT relief are placed in "asylum-only" proceedings, not removal proceedings.  See Shehu, 482 F.3d at 655.

[3] Petitioners testified about the alleged mistreatment they received at the hands of the Serbian government in the years leading up to their 1998 flight from Kosovo. In denying their respective applications for relief, the IJ found that the Serbian

intervened in Kosovo in 1999, Petitioners and their family returned there. Around that same time, Adnan joined the LDK (Adem had joined several years earlier).

In September 2000, Petitioners attended a political rally. On their way home — Petitioners lived together, along with many of their family members — AAK supporters beat and threatened the two of them and burned their LDK flags. In February 2001, Petitioners received threatening telephone calls after a leader from the LDK visited their home. In May 2001, there was an explosion outside Petitioners' house. They reported the explosion to the police, who said that it was "nothing." A few days later, Petitioners received an anonymous phone call. The caller stated that the explosion was a warning and threatened that each family member would be killed if they continued to support the LDK.

In June 2001, five or six masked men accosted Adnan and his father on their way home from work. The masked men beat the two of them, and threatened to kill them if they continued to support the LDK. A few months later, a group of masked men broke into Petitioners' house looking for Adem, who was not there at the time. The men beat Adem's father, and stated that they would have killed Adem if he had been home. In light of this incident, Adem went into hiding for several months.

---

government was no longer in a position to carry out this mistreatment because the United Nations had gained control over the region. On appeal, the BIA explained that, "[f]or understandable reasons, [Petitioners] make[] no claim for relief related to actions taken by Serbian forces." (See Admin. R. at 39, 43.) Petitioners did not challenge this characterization in their motion to reconsider, nor do they do so here.

In August 2002, Adnan's father's store was attacked by gunfire. Adnan and his father, who were inside the store at the time but escaped unharmed, received a threatening phone call the next day. A few months later, two men beat Adem on his way to the train station, injuring his ear. In April 2003, Adem was again accosted by two men, who beat him and threatened that, if he did not leave Kosovo, he would be buried there.

In July 2003, a group of masked men abducted Adem. They placed a bag over his head and drove around for approximately thirty minutes, during which time they beat and threatened him. They then threw Adem from the car, removed the bag, placed a gun in his mouth, and told him that he was about to die. Adem begged for his life, and the men proceeded to beat him until he passed out. The men were gone when he awoke, so he went home and began making plans for his departure from Kosovo. He left shortly thereafter.

Around that same time, Adnan and his father were also abducted by a group of masked men. The men forced Adnan and his father into separate cars and proceeded to beat them. The men threatened that they would kill the two of them if they continued to support the LDK. The men then threw Adnan and his father out of the cars, continued to beat them, and put a gun to Adnan's head. The men ultimately let the two of them go, and Adnan left Kosovo two days later.

Petitioners testified that they and their family members in Kosovo — with the

5

possible exception of one relative — are no longer members of the LDK. Petitioners did not allege that the family had received additional threats since their departure from Kosovo, or that the Albanian extremists were looking for the two of them.

In December 2006, the IJ denied Petitioners' respective applications. The IJ found that Petitioners each lacked credibility, and that Adnan's claims did not rise to the level of past persecution. The IJ further found that the conditions in Kosovo had fundamentally changed since Petitioners' departure, noting that the LDK and AAK had entered into a ruling coalition in October 2004. The IJ also rejected Petitioners' argument that they would be tortured by, or with the acquiescence of, the government upon their return to Kosovo, noting that the LDK was the most popular political party in Kosovo. As a result, the IJ ordered Adnan's removal and returned Adem's case to the Department of Homeland Security.

Petitioners appealed the IJ's decision to the BIA, which addressed their respective cases in separate (but similar) decisions. The BIA rejected the IJ's adverse credibility determinations, concluding that they were "based on improper speculation and inconsistencies that are either not fully supported by the record or have been reasonably explained by [Petitioners]." (Admin. R. at 40, 44.) The BIA agreed with the IJ, however, that Adnan's claims did not rise to the level of past persecution and that, even if he and Adem had suffered past persecution, fundamental changes had occurred in Kosovo that rebutted any presumption of a well-founded fear of future persecution. The BIA further concluded that Petitioners had not otherwise established a well-founded fear of future

6

persecution, for they were no longer members of the LDK, and there was no evidence that Albanian extremists in Kosovo had harmed their family since their departure or were looking for them. Finally, the BIA held that Petitioners had not established that they would likely be tortured by, or with the acquiescence of, the government in Kosovo.

Petitioners timely filed a joint petition for review. Because the BIA had issued separate decisions, the Clerk docketed Adnan's and Adem's respective cases separately (C.A. Nos. 09-3055 and 09-3057, respectively). Meanwhile, in July 2009, Petitioners jointly moved the BIA to reconsider its June 2009 decisions. In February 2010, the BIA, in a single decision, denied the motion on the merits, finding "no basis to reconsider our June 17, 2009, decision[s]." (Admin. R. at 3.) Petitioners then timely filed a petition for review of that decision, and the Clerk docketed this new petition at C.A. No. 10-1854. The Clerk subsequently granted the Government's unopposed motion to consolidate the three cases, and they are now ripe for disposition.

## II.

We have jurisdiction over the instant petitions pursuant to 8 U.S.C. § 1252(a)(1).[4] We review the agency's factual findings, including its conclusions concerning evidence of past persecution and a well-founded fear of persecution, for substantial evidence. See

---

[4] Our jurisdiction under § 1252(a)(1) is limited to the review of "final order[s] of removal." Although Adem was not in removal proceedings, we nonetheless have jurisdiction to review his claims because, as we have previously explained, "a denial of a VWP applicant's petition for asylum, withholding of removal, and relief under the CAT constitutes 'a final order of removal' within the meaning of [§ 1252(a)(1)]." Shehu, 482 F.3d at 656.

7

Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). Under this deferential standard of review, we may not disturb the agency's findings "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001). We review the agency's denial of Petitioners' motion to reconsider for abuse of discretion, see Borges v. Gonzales, 402 F.3d 398, 404 (3d Cir. 2005), and must uphold that decision unless it is "arbitrary, irrational, or contrary to law." Id. (quotation marks and citation omitted).

To obtain asylum, an alien must show that he is unable or unwilling to return to the country in question "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); see 8 U.S.C. § 1158(b). A showing of past persecution creates a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). That presumption is rebutted, however, if the Government establishes, by a preponderance of the evidence, that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the [country in question]." See 8 C.F.R. § 1208.13(b)(1)(i)(A), (ii).

In this case, even if Petitioners could establish past persecution, substantial evidence supports the agency's determination that the changed circumstances in Kosovo rebut any presumption of a well-founded fear of persecution, and that Petitioners have not otherwise demonstrated a well-founded fear of future persecution. As the BIA highlighted, the political landscape in Kosovo has changed since Petitioners' departure,

8

with the AAK — whose supporters Petitioners claim to fear — forming a ruling coalition with the LDK. Additionally, Petitioners' family members in Kosovo — with the possible exception of one relative — are no longer members of the LDK, and there is no indication that the family has continued to experience any of the earlier troubles highlighted by Petitioners. Moreover, Petitioners themselves are no longer members of the LDK, further lessening the possibility that they would be harmed if they returned to Kosovo.

Because Petitioners cannot satisfy the standard for asylum, they cannot meet the higher standard for withholding of removal. See Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003). Additionally, they have not shown that the evidence compels a finding that either one of them would likely be tortured by, or with the acquiescence of, the government in Kosovo. Finally, Petitioners have failed to establish that the BIA abused its discretion in denying their motion to reconsider.[5]

Having reviewed the record, we are confident that, contrary to Petitioners' contention, the BIA properly considered all of the record evidence in reaching its decisions. Accordingly, and in light of the above, we will deny the petitions for review.

---

[5] Petitioners argue that "the BIA inexplicably departed from established standards for [reviewing a] motion to reconsider in denying Petitioners' motion on the ground that Petitioners did not submit[] new evidence in support of the motion." (Pet'rs' Supplemental Br. 20.) This argument lacks merit, for the BIA denied the motion not because Petitioners failed to provide new evidence, but because they did not establish a basis for disturbing the BIA's earlier decisions. Nor do we agree with the Petitioners' contention that the BIA simply "disregarded" their motion.