

Villanova University School of Law Digital Repository

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-9-2007

# Shehu v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-5072

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Shehu v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1168.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-5072

ARJAN SHEHU,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of Final Decision of the
Board of Immigration Appeals
BIA No.: A96-017-867
Immigration Judge: The Honorable Eugene Pugliese

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 15, 2007

Before: SMITH and FISHER, *Circuit Judges*,

1

and DOWD, *District Judge*[*]

(Filed: April 9, 2007 )

Robert J. Pures II, Esq.
Aleksander B. Milch, Esq.
Charles Christophe, Esq.
Christophe & Associates, P.C.
Two Wall Street, Eighth Floor
New York, NY  10005
        *Counsel for Petitioner*

Peter D. Keisler, Esq.
William C. Peachey, Esq.
Paul F. Stone, Esq.
Marion E.M. Erickson, Esq.
U.S. Department of Justice
P.O. Box 502
Washington, D.C.  20044
        *Counsel for Respondent*

---

OPINION

---

SMITH, *Circuit Judge*.

---

[*]The Honorable David D. Dowd, Jr., Senior District Judge for the Northern District of Ohio, sitting by designation.

2

Arjan Shehu is a native and citizen of Albania. Shehu sought admission to the United States under the Visa Waiver Program ("VWP"), which permits aliens from certain countries to enter the United States for 90 days without a visa. Shehu violated the program by overstaying that period. The Immigration Judge ("IJ") denied him asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision. We hold that we have jurisdiction to review the BIA's denial of a VWP applicant's petition for asylum, withholding of removal, and relief under the CAT. However, we will affirm the decisions of the BIA and the IJ on the merits of Shehu's claims.

## I. Summary of Facts and Procedural History

Shehu was born in Albania on April 5, 1961 and resided there until April 1997. Shehu participated in a pro-democracy demonstration in January, 1991. He was arrested during the demonstration and taken to a police station. The police detained Shehu for a week, during which time they beat and threatened to kill him. Shehu joined the Democratic Party the following month and testified that he remained active in the Party until his departure to the United States.

Civil unrest erupted in Albania in early 1997. Bank

robberies became common. Shehu moved in with his brother, the director of a local bank, for mutual protection. One evening in March, 1997, a group of masked and armed men entered Shehu's brother's house and beat and kidnapped them both. The assailants took Shehu and his brother to another location, beat them again, and threatened to kill them if Shehu's brother did not give them access to the bank's money. They held Shehu for ransom while his brother was taken to get the necessary keys and codes required for access to the bank. The gang released Shehu on the following afternoon. Shehu returned home and found his brother already there.

Shehu and his brother were determined to thwart the robbery. They arrived at the bank and removed the money before their assailants arrived. They hid the money at three different safe locations. Shehu's brother took his family to his in-laws' home in a nearby village. Shehu and his brother made a complaint at the police station the following day. They then went into hiding in another village for the next two months.

Shehu then left Albania and went to Greece. He obtained a series of temporary work permits and lived in a hotel. Shehu testified that his assailants tracked him to Greece. Unidentified men beat another one of Shehu's brothers who was then living in Greece and demanded to know Shehu's whereabouts. Shehu's brother gave them one of Shehu's old addresses, then called Shehu to warn him. Shehu fled to another city in Greece, stayed for a few days, then left for the United States via Paris

4

and the Caribbean.

Shehu arrived in Miami, Florida on December 22, 2002. He claimed that he was an applicant to the VWP. The authorities became aware that he was violating that program and served him with a Notice of Referral to an IJ on December 11, 2003. Shehu conceded that he was a VWP violator and filed an application for asylum, withholding of removal, and relief under the CAT, recounting the above facts and requesting relief. The IJ found that the criminal gang that pursued Shehu did not do so on the basis of race, religion, nationality, membership in a particular social group, or political opinion–but out of a mere desire for money. The IJ also held that any presumption of a well founded fear of future persecution arising from his 1991 imprisonment was rebutted by the many years Shehu spent without persecution and by the collapse of the Communist regime. The IJ denied his request for asylum, withholding of removal and relief under the CAT. However, the IJ did not expressly order Shehu removed, because Shehu was referred to the IJ for "asylum-only" proceedings. According to agency regulations, these proceedings deal only with petitions "for asylum or withholding or deferral of removal [under the INA or CAT], and whether asylum shall be granted in the exercise of discretion." *See* 8 C.F.R. § 208.2(c)(3)(i). The alien cannot contest removability or admissibility and cannot present other grounds for relief. *Id*. The BIA affirmed and adopted the IJ's decision.

5

## II. Discussion

### A. Jurisdiction

We must determine whether we have jurisdiction over Shehu's appeal before we can proceed to the merits of his claim. Both parties contend that we have jurisdiction. However, "[d]espite the agreement of both parties, we have an independent obligation to examine our jurisdiction to hear this appeal." *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 229 (3d Cir. 1998).

Shehu was processed as an applicant in the VWP program, which allows entrants from certain countries to visit the United States for 90 days or less without a visa. *See* 8 U.S.C. § 1187(a). Aliens admitted under this program forfeit the right to challenge the basis of their removal, though they may still apply for asylum, withholding of removal, and relief under the CAT. *See* 8 U.S.C. § 1187(b). Therefore, VWP participants who apply for asylum are granted "asylum-only" hearings. *See* 8 C.F.R. § 208.2(c)(i). If the applicant is denied relief in those proceedings, the VWP participant can be removed without any further process. 8 C.F.R. § 217.4(a)(1). The BIA issued a final order denying Shehu's application for relief.

We must determine if the BIA's denial of Shehu's application for relief is a reviewable order. The jurisdictional basis for our review of immigration determinations is found at

6

8 U.S.C. § 1252.  It provides:

> (a) Applicable provisions
>
> (1) General orders of removal
>
> Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title) is governed only by chapter 158 of Title 28, except as provided in subsection (b) of this section . . . .
>
> (2) Matters not subject to judicial review
>
> \* \* \*
>
> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252.  Section 1158(a) states that, "[a]ny alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section."  8 U.S.C. § 1158(a).

The Eleventh Circuit addressed the identical question and held that "[t]he denial of an asylum application in a [VWP] proceeding is so closely tied to the removal of the alien that it can be deemed–in conjunction with the referral to the immigration judge–as a final order of removal, subject to § 1252(a)(1)." *Nreka v. Att'y Gen.*, 408 F.3d 1361, 1367 (11th Cir. 2005). The Second Circuit came to the same conclusion, holding that:

> Although the denial of asylum in a Visa Waiver Program case does not occur in the context of removal proceedings, denial of the asylum application is the functional equivalent of a removal order under the provisions of the Visa Waiver Program. Were we to elevate form over substance by holding that the disposition of asylum-only proceedings does not function as a final order of removal to confer jurisdiction, we would create uncertainty over exactly what procedure a Visa Waiver applicant could pursue in order to obtain review of his or her asylum proceedings in the Courts of Appeals.

*Kanacevic v. INS*, 448 F.3d 129, 134-35 (2d Cir. 2006). This Court has never squarely considered this jurisdictional question in a precedential opinion. We hold that a denial of a VWP applicant's petition for asylum, withholding of removal, and

relief under the CAT constitutes "a final order of removal" within the meaning of the statute, as the alien is entitled to no further process before deportation. 8 U.S.C. § 1252(a)(1); *see also* 8 C.F.R. § 217.4(a)(1). We therefore have jurisdiction over Shehu's appeal.

Our holding comports with the interpretation of the predecessor statute to 8 U.S.C. § 1252(a)(1), which provided that jurisdiction over "all final orders of deportation . . . made against aliens within the United States pursuant to administrative proceedings under [8 U.S.C. § 1252(b)]" lies exclusively in the courts of appeals. 8 U.S.C. § 1105a(a). The Supreme Court held that the term "final orders of deportation" included not only the actual order of deportation, but all orders closely related to the deportation proceeding conducted pursuant to 8 U.S.C. § 1252(b) and entered during the proceeding. *See Foti v. INS*, 375 U.S. 217 (1963); *Giova v. Rosenberg*, 379 U.S. 18 (1964); *see also Carvajal-Munoz v. INS*, 743 F.2d 562, 566 (7th Cir. 1984) (applying *Foti* to a denial of asylum). The Sixth Circuit clearly explained the rule, holding that "orders of deportation" include "any denial of discretionary relief during a deportation proceeding, where such relief, if granted, would foreclose deportation," such as, "[d]enials of applications for withholding of deportation or for asylum." *Perkovic v. INS*, 33 F.3d 615, 618 (6th Cir. 1994).

We hold that 8 U.S.C. § 1252 vests us with jurisdiction to hear Shehu's appeal from a denial of asylum, withholding of

removal, and relief under the CAT.

B. Asylum, Withholding of Removal, and Relief
under The Convention Against Torture

As the BIA adopted the IJ's decision, we review the decisions of both the IJ and the BIA. *See Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We review the IJ and BIA's findings for substantial evidence and, therefore, may not set them aside unless a reasonable factfinder would be compelled to find to the contrary. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). An alien must demonstrate that he is a "refugee" in order to receive a grant of asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987). A "refugee" is defined as an alien "unable or unwilling" to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The alien must have a subjectively genuine fear of persecution and provide credible evidence that his fear is objectively reasonable. *See Cardoza-Fonseca*, 480 U.S. at 431.

The BIA affirmed the IJ's finding that the criminal gang that pursued Shehu was motivated by a bare desire for money, not by political opinion or by hostility to Shehu's family. There is no evidence in the record that compels a contrary conclusion. There is no evidence in the record to compel a reasonable factfinder to adopt Shehu's allegation that he would not have

10

been targeted had he not been a member of the Democratic Party. Shehu alleged for the first time at his hearing that the gang was headed by the Governor. Substantial evidence supports the IJ's decision to disregard this testimony, as none of Shehu's previous filings made this allegation. Substantial evidence also supports the IJ's conclusion that the criminal gang was not motivated by animus toward Shehu's family, particularly as Shehu adduced no evidence showing that family members not involved in thwarting the robbery were threatened. *See Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1999).

An applicant who establishes past persecution is "entitled to a presumption that his life or freedom will be threatened if he returns." *Gabuniya v. Att'y Gen.*, 463 F.3d 316, 321 (3d Cir. 2006); *see* 8 C.F.R. § 208.16(b)(1). The Government may rebut this presumption by demonstrating by a preponderance of the evidence that "[t]here has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened . . . upon the applicant's removal." 8 C.F.R. § 208.16(b)(1)(i)(A) and (b)(1)(ii). Substantial evidence supports the IJ's conclusion that any presumption of a well-founded fear of future persecution arising from Shehu's 1991 imprisonment is rebutted by the collapse of the Communist regime and the eleven years during which Shehu was free from government persecution.

The IJ found that because Shehu had not shown an objectively reasonable basis for his fear of persecution so as to

11

establish grounds for asylum, he had also not established the clear probability of persecution required for withholding of removal. *See, e.g.*, *Gabuniya v. Att'y Gen.*, 463 F.3d 316, 320-21 (3d Cir. 2006).

To demonstrate entitlement to relief under the CAT, Shehu must show that he is "more likely than not" to be tortured if he returns to Albania. 8 C.F.R. § 1208.16(c)(2). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). No evidence in the record compels the conclusion that Shehu is "more likely than not" to be tortured with the consent or acquiescence of the Albanian government upon his return.

We will deny the petition for review.