OPINION
PER CURIAM.
Fatmir Kucana petitions for review of the Board of Immigration Appeals’ (“BIA”) final order affirming the Immigration Judge’s (“IJ”) denial of Kucana’s application for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”). For the reasons that follow, we will deny the petition.
I.
Kucana, a 28-year-old native and citizen of Albania, entered the United States in October 2006. Although he attempted to enter pursuant to the Visa Waiver Program,[1] he violated that program by using a fraudulent Italian passport. Shortly after his arrival, he applied for asylum; withholding of removal, and relief under the CAT. As a result, he was placed in “asylum-only” proceedings and referred to an IJ.
In a January 2008 hearing before the IJ, Kucana testified that two unidentified men killed his father in Albania in June 1997. Kucana believed that these men committed the killing because of his father’s support for Albania’s Democratic Party, and Kuca-na’s great uncle testified that the men were members of Albania’s Socialist Party. After his father’s passing, Kucana and his . family moved to another part of Albania. In September 2006, Kucana returned to his former hometown to visit his father’s grave. On his way to the cemetery, the district chairman of Albania’s Democratic Party approached Kucana. During their conversation, the chairman stated that he was a friend of Kucana’s father, and he requested that Kucana meet with him the next day. Kucana agreed to do so.
When Kucana arrived at the meeting place the following day, two other individuals were present on the chairman’s behalf. They told Kucana to avenge his father’s death by placing explosives at the home of the Socialist Party leader. They explained that someone would train him in explosives, and that he needed to carry out the *321 act as soon as possible. At the end of the meeting, Kucana told them that he needed to visit his mother for a few days. They asked for his phone number, and told him that if anyone learned of their plans, “this will cause the heads, your head or someone’s life, but they meant [Kueana’s] life.” (Admin. Rec. at 91.) After the meeting, Kucana told his mother what had transpired. She feared that he might now suffer harm at the hands of the Socialist Party and the Democratic Party, so she advised him to leave the country. Kucana testified that, a few weeks before the immigration hearing, his mother called him from Albania, informing him that she had received threatening phone calls from people looking for him.
At the close of the hearing, the IJ denied Kucana’s application. With respect to Kucana’s fear of the Socialist Party, the IJ stated that it “does not see sufficient evidence in [the record] to establish that [Ku-cana’s] father was killed for political reasons or that any of those political reasons are being imputed to [Kucana].” (Decision of IJ at 14.) Moreover, the IJ concluded that Kucana had not suffered any harm on account of his father’s political opinion and that, because the Socialist Party was no longer in power, there was even less likelihood that he would suffer such harm in the future. As for Kucana’s fear of the Democratic Party, the IJ made an adverse credibility finding, concluding that Kucana’s story about the proposed bombing was “highly implausible.” (Id. at 9.)
On appeal, the BIA affirmed the IJ’s decision without an opinion. Kucana now petitions for review of the BIA’s decision.
II.
We have jurisdiction over this petition pursuant to 8 U.S.C. § 1252(a)(1). See Shehu, 482 F.3d at 656. Because the BIA affirmed the IJ’s decision without an opinion, we review the IJ’s decision. See Pierre v. Att’y Gen. of the U.S., 528 F.3d 180, 184 (3d Cir.2008) (en banc).
We, like the Government, have difficulty making sense of the argument Kucana presents in his brief. It appears that he is challenging only the IJ’s adverse credibility finding. We review that finding for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir.2005). Under this deferential standard of review, we must uphold the IJ’s finding “unless the evidence not only supports a contrary conclusion, but compels it.” Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir.2001).
Kucana has not shown that the substantial evidence compels vacating the IJ’s adverse credibility determination. “[A]n adverse credibility determination may properly be based on implausibility or inherent improbability,” provided that the record supports, and there are “specific, cogent reasons” for, that determination. Berishaj v. Ashcroft, 378 F.3d 314, 324 (3d Cir.2004). In this case, the IJ cogently explained the reasons for his skepticism of Kueana’s story:
[W]e have a rather strange situation, where [Kucana] is approached by people, nine or ten years after the fact, and then asked to perform a terrorist act that he apparently did not have any training for and was not, as was pointed out on cross-examination, was not within the inner circle, by any means, of the Democratic Party, and therefore, was not necessarily someone who could be seen logically as someone who would be trusted with such an extreme exercise, namely bombing someone he did not know and whom he had no personal vendetta against.
(Decision of IJ at 10.)
Additionally, the IJ highlighted that the background materials on Albania further *322 undermine the plausibility of Kucana’s story. For example, the U.S. State Department’s 2007 Country Report on Human Rights Practices for Albania states that “[t]here were no reports that the government or its agents committed arbitrary or unlawful killings,” and that “[t]here were no reports of politically motivated disappearances.” (Admin. Rec. at 119-20.) Moreover, the State Department’s March 2006 Profile of Asylum Claims and Country Conditions for Albania states that “there have been no outbreaks of political violence since 1998, and the available evidence suggests that neither the Government nor the major political parties engage in policies of abuse or coercion against their political opponents.” (Id. at 139.) Kueana has not identified any record evidence to the contrary.
In light of the above, we will deny Kuca-na’s petition for review.

. Under the Visa Waiver Program ("VWP”), aliens from certain countries are permitted to visit the United States for ninety days or less without a visa. See 8 U.S.C. § 1187(a); 8 C.F.R. § 217.2. An alien who applies for admission under the VWP agrees to waive any challenge to his removal, except on the basis of an application for asylum, withholding of removal, and/or relief under the CAT. See 8 U.S.C. § 1187(b); Shehu v. Att’y Gen. of the U.S., 482 F.3d 652, 655 (3d Cir.2007). VWP applicants who apply for such relief are placed in "asylum-only" proceedings. Shehu, 482 F.3d at 655.