**Tommy Setiawan KHOE, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 08–3916.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 26, 2010.

Filed: June 4, 2010.

---

Joseph C. Hohenstein, Esq., Orlow, Kaplan & Hohenstein, Philadelphia, PA, for Petitioner.

Regina Byrd, Esq., Francis W. Fraser, I, Esq., Thomas W. Hussey, Esq., Jessica Segall, Esq., United States Department of Justice, Washington, DC, for Respondent.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

## OPINION

PER CURIAM.

Petitioner Tommy Setiawan Khoe, a native and ethnic Chinese Christian citizen of Indonesia, filed a timely petition for review from the Board of Immigration Appeals' ("BIA") final order of removal. For the following reasons, we will deny the petition for review.

Khoe entered the United States in June 1998 as a visitor authorized to remain in the country for six months. In 2003, the Government placed him in removal proceedings pursuant to 8 U.S.C. § 1227(a)(1)(B), for overstaying his visa. Khoe filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming that he was persecuted in the past and that he had a fear of future persecution in Indonesia on the basis of his Chinese ethnicity and Christian religion.

Khoe's testimony and personal statement described generally that he was bullied and ridiculed as a child by Muslim children at school and in his community. In 1990, when he was twenty-one years old, unknown teenage ethnic Indonesians stopped him on his motorcycle on his way home from work, punched him several times, and took his money, motorcycle, and watch. (A.R. at 128–29.) Khoe did not need medical treatment and he did not report the incident to the police because he believed that they would do nothing unless they were paid. (Id.) In June 1996, a group of Indonesians approached Khoe and his girlfriend, who were stopped in his car at an intersection. (A.R. at 130; Pet'r A. at 37.) When Khoe refused their demand for money and jewelry, they punched him and attempted to harm his girlfriend. (Id.) He fought the attackers with a car jack until the assailants fled. (Id. at 131.) Again, he did not report the incident to the police. (Id.) Khoe and his family suffered in the riots that occurred in Indonesia in May 1998 (A.R. at 127; Pet'r A. at 37), when native Indonesians burglarized the family home, took property, and set the house

afire. (Pet'r A. at 37.) The place where Khoe worked was also burnt to the ground. (*Id.*) Although he acknowledged that it is "safe [in Indonesia] at this time," he was still anxious that things could change and therefore, it was not "100% safe to live there." (A.R. at 133.)

On June 14, 2006, following a hearing, the IJ denied Khoe's applications for relief and ordered him removed. The IJ determined that the asylum application was statutorily barred because it was filed about six years after he arrived in the country. As for withholding of removal, the IJ concluded that Khoe had not met his burden of showing past persecution or the clear probability of future persecution. Specifically, the IJ found that the 1990 robbery and the 1996 attempted robbery were isolated crimes committed by unknown native Indonesian assailants who may have targeted Khoe because of his wealth. As for the harm Khoe and his family suffered during the May 1998 riots, citing *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir.2005), the IJ concluded that the Indonesian government did not condone a pattern or practice of persecution of ethnic Chinese. The IJ also determined that Khoe failed to prove a pattern or practice of persecution of Chinese Christians by the Indonesian government. The IJ also found that Khoe did not have a well-founded fear of future persecution. Accordingly, the IJ denied Khoe's application for withholding of removal and for CAT relief. On August 27, 2008, the BIA adopted and affirmed the IJ's decision and dismissed the appeal. Khoe filed a timely petition for review.

We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA expressly adopts the IJ's decision and reasoning pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), we review the decisions of both the IJ and the BIA to determine whether the BIA's decision to defer to the IJ was appropriate. *Shehu v. Attorney Gen.*, 482 F.3d 652, 657 (3d Cir.2007). We review the factual findings of the IJ for substantial evidence. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir.2003). We will uphold the findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The agency's decision "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001); *see also* 8 U.S.C. § 1252(b)(4)(B).

Khoe challenges only the IJ's denial of withholding of removal based on his failure to establish past persecution.[1] To establish "past persecution," the alien must show: (1) an incident, or incidents, that constituted persecution; (2) that occurred on account of one of the statutorily-protected grounds; and which (3) were committed by the government or forces the government is either unable or unwilling to control. *Berishaj v. Ashcroft*, 378 F.3d 314, 323 (3d Cir.2004). Persecution, narrowly defined, includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir.1993). "[P]er-

---

1. For withholding of removal purposes, the alien bears the burden of proving that he will more likely than not be subject to persecution on account of a protected ground. *See I.N.S. v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Senathirajah v.* INS, 157 F.3d 210, 215 (3d Cir.1998). If the alien can demonstrate past persecution, that finding will raise a rebuttable presumption that the alien's "life or freedom would be threatened in the future...." 8 C.F.R. § 1208.16(b)(1)(i).

secution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.* at 1240.

Khoe argues that the IJ failed to fully consider that the destruction of the family home and business in the May 1998 riots amounted to economic persecution. We disagree. Here, the IJ credited Khoe's testimony as being consistent with his personal statement, finding that ethnic Chinese businesses were targeted during the 1998 riots and Khoe's family home and business were destroyed in the May 1998 riots.[2] Citing our decision in *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir.2005), the IJ determined that Khoe failed to establish government action or acquiescence in the May 1998 riots. In Lie, we noted that violence against Chinese Christians during riots that plagued Indonesia in 1998 "seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence." *Id.* at 537. Given the lack of evidence showing the Indonesian government's action or acquiescence in Khoe's case, we are not compelled to conclude that the violence visited on his family during the May 1998 riots constituted persecution, economic or otherwise.[3]

Khoe claims that, taken together, the robbery, attempted robbery, and the decimation of his family's home and business during the May 1998 riot, amount to persecution sufficient for withholding of removal purposes. We disagree. Although the harm described in the robbery and attempted robbery is troubling, it does not constitute past persecution. *See Lie,* 396 F.3d at 536 (holding that an ethnic Chinese Indonesian's account of two isolated criminal acts by unknown assailants, which resulted only in the theft of some personal property and a minor injury, was not sufficiently severe to constitute persecution); *Konan v. Attorney Gen.,* 432 F.3d 497, 506 (3d Cir.2005) (generalized lawlessness and violence between diverse populations is generally insufficient to show past persecution). In Khoe's case, the robbery incidents, perpetrated by unknown civilians, were about six years apart. Moreover, there is no evidence that the crimes were ethnically or religiously motivated, and neither crime resulted in injury requiring medical treatment. As we have already discussed, the harm Khoe suffered in the May 1998 riots did not amount to persecution for immigration purposes. Thus, we cannot say that the evidence presented, considered in the aggregate, was so compelling that no reasonable factfinder could fail to find the requisite persecution.

For the foregoing reasons, we will deny the petition for review.

---

**2.** Khoe's asylum statement states that the place where he worked was burned to the ground. The IJ apparently took Khoe's personal statement to mean that the family business was destroyed. (A.R. at 140) (noting that "the respondent's family home business was destroyed in the '98 during the riots. And, he left two months after the last incident.")

**3.** Khoe's reliance on *Ouda v. I.N.S.,* 324 F.3d 445 (6th Cir.2003) is misplaced. Citing *Ouda,* Khoe argues that the IJ's findings (the riots targeted ethnic Chinese Christians and Khoe's family home and business were destroyed in the riots), were sufficient to support a finding of past persecution. Having reviewed *Ouda,* we cannot find any material similarity between that case and this one. Notably, there is no such evidence of government involvement here. *See Lie,* 396 F.3d at 537.