**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
————————

No. 16-2786
————————

JOSE RAFAEL LOPEZ MENDEZ,
Petitioner

v.

THE ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent

————————————————————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A087-942-526)
Immigration Judge:  Annie S. Garcy

————————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2017
Before:  RESTREPO, SCIRICA and FISHER, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  March 28, 2017)
————————

OPINION[*]
————————

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jose Rafael Lopez Mendez petitions for review of the final removal order of the Board of Immigration Appeals ("BIA"). For the reasons that follow, we will deny the petition for review.

Lopez Mendez is a native and citizen of Guatemala. His removal proceedings began in 2010, on charges of removability as an alien present in the United States without admission or parole (8 U.S.C. § 1182(a)(6)(A)(i)). Through counsel, Lopez Mendez conceded the charge of removability and designated Guatemala as the country of removal. He later filed an application for withholding of removal and deferral of removal under the United Nations Convention Against Torture ("CAT"), claiming that he feared being persecuted and tortured if he were to return to Guatemala.

During the proceedings before the Immigration Judge ("IJ"), Lopez Mendez described the dangerous conditions in Guatemala during the 1970s and 1980s, resulting from the conflict between the military and the guerillas. In 1982, after finishing high school, Lopez Mendez left Guatemala and came to the United States to work in construction, but he returned to Guatemala in 1985. In 1988, Lopez Mendez came back to the United States in order to provide a "better life" for his family. Lopez Mendez later learned that his father had been killed in El Salvador, the country of his father's birth, for political reasons.[1] Lopez Mendez stated that he fears returning to Guatemala because of

---

[1] Lopez Mendez's written statement supplied the year of his father's death as 1989, but he testified that his father was killed in 1999. Also, although Lopez Mendez testified as to his fear of harm in El Salvador, the designated country of removal is Guatemala.

that country's current problems with gang violence, although he has not had prior interactions with gangs. He explained that he likely would become a truck driver, and that truck drivers are at risk of being kidnapped or killed by gang members if monetary payment demands are not fulfilled. He noted that there is no safety in Guatemala because the police are informers for the gangs. Lopez Mendez also explained that his father had been a very wealthy priest before being killed in El Salvador, and he believed that he would be targeted as his father's son. Lastly, Lopez Mendez argued that he feared future persecution as a member of a particular social group, that is, as a Guatemalan returning to the country upon removal, after having resided in the United States.

After considering Lopez Mendez's testimony and documentary evidence, the IJ denied Lopez Mendez's applications for relief and ordered his removal to Guatemala. Among other things, the IJ explained that Lopez Mendez failed to establish a link between his membership in his claimed particular social group and the harm that he claimed to fear, and that Lopez Mendez's vague claims of fear regarding the dangerous and violent conditions in Guatemala were insufficient for granting withholding of removal or CAT relief. The BIA dismissed Lopez Mendez's appeal, agreeing with the IJ's determination that Lopez Mendez did not meet his burden of proof for withholding of removal, even if he had established his membership in a particular social group. Noting the absence of any evidence of threats made against Lopez Mendez, the BIA concluded that he did not establish that he would be a target of persecution because of his father—in either Guatemala or in El Salvador—and that his general fear of gang violence was not a

3

basis for withholding of removal. Finally, the BIA found no clear error in the IJ's determination that Lopez Mendez failed to make the requisite showing for protection under the CAT.[2] This pro se petition for review followed.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). The BIA agreed with the IJ's decision and added its own reasoning, and thus, we review the decisions of both the IJ and the BIA. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's factual determinations under the substantial evidence standard. See id. at 251. The agency's findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We exercise de novo review over the agency's legal decisions. See Sandie, 562 F.3d at 251.

In his brief, Lopez Mendez contends that the agency's denial of his application for withholding of removal and for CAT protection was erroneous. He restates his claim that he would be the target of gang violence as a member of his father's family and as a "young male returning to Guatemala after a long residence in the USA," noting that the Guatemalan government is unable and unwilling to control the gangs. Pet'r Br. at 2. Lopez Mendez relies on our decision in Shardar v. Att'y Gen., 503 F.3d 308, 317 (3d Cir. 2007), in which we found fault with the BIA's finding that the petitioner's situation was not "appreciably different from the dangers faced by all his countrymen" in Bangladesh.

---

[2] Lopez Mendez argued to the BIA that the IJ's denial of his motion to change venue constituted a denial of due process. He does not pursue this claim in his brief, so we will not consider it here.

4

However, Shardar is distinguishable on its facts; there, the petitioner had suffered past persecution as a local political leader, and agents of the opposing political party had beaten and threatened the petitioner's brother, with specific inquiries regarding the petitioner's whereabouts. Thus, we concluded in Shardar that the evidence showed that the petitioner likely would be a specific target of persecution for his political beliefs. See id., 503 F.3d at 316-17 (discussing evidence presented in context of motion to reopen proceedings). Here, Lopez Mendez did not present evidence as to any specific threats made against him by Guatemalan gang members, or by anyone else, for any reasons. Although Lopez Mendez speculates that he might become a victim of crime in Guatemala, the evidence does not compel a finding that gang members have any particular interest in him. Lopez Mendez's general fear concerning prevalent gang activity in Guatemala, without more, does not establish his eligibility for withholding of removal. See Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007) (mistreatment resulting from gang's bare desire for money is not persecution on account of a protected ground); Abdille v. Ashcroft, 242 F.3d 477, 494-95 (3d Cir. 2001) (ordinary criminal activity does not rise to the level of persecution).

In addition, Lopez Mendez cites Camara v. Att'y Gen., 580 F.3d 196 (3d Cir. 2009), in support of his position that his testimony and evidence concerning current conditions in Guatemala, as well as concerning the death of his father at the hands of criminals, was sufficient to meet his burden of proof on his claims that he faces future persecution and torture. The situation presented in Camara was far different, however.

The petitioner in Camara fled her native country after witnessing her father's abduction from the family home by armed men; those men had accused her father of supporting anti-government rebel forces and had threatened the entire family with harm. See id. at 198. In contrast, Lopez Mendez did not witness harm to his family members, he was never directly threatened with harm, and he was never forced to flee his home. There is no evidence that the tragedy of his father's death at the hands of criminals in El Salvador more than a decade ago will affect Lopez Mendez's safety if he now were to return to Guatemala. We discern no error in the BIA's conclusion that Lopez Mendez has not shown that it is more likely than not that he will suffer torture with the consent or acquiescence of government officials, as is required for obtaining CAT relief. See 8 C.F.R. §§ 1208.16(c) and 1208.18(a).

We have considered the arguments in Lopez Mendez's brief and conclude that they are without merit.[3] Accordingly, we will deny the petition for review. The motion to stay removal is denied.

---

[3] Lopez Mendez states in his brief that his attorney did not properly present his claim of his membership in a particular social group, and that the IJ erroneously denied him temporary protected status ("TPS"). Because Lopez Mendez did not exhaust his administrative remedies on these issues, we lack jurisdiction to consider them. See 8 U.S.C. § 1252(d)(1).

6