NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1180
_____

EDVIN JOSUE ALVAREZ-LAJUJ,
a/k/a/ Edvin Lajuj,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA-1: A206-361-295)
Immigration Judge: John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 19, 2020

BEFORE:  GREENAWAY, JR., COWEN, and FUENTES, *Circuit Judges*

(Filed: March 3, 2021)
_____

OPINION*
_____

_____

GREENAWAY, JR., *Circuit Judge*.

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Edvin Alvarez-Lajuj seeks review of the order of removal entered against him by the Board of Immigration Appeals ("BIA"). For the reasons below, we will affirm.

I.    BACKGROUND

Alvarez-Lajuj is a 25-year-old Guatemalan citizen of indigenous Achi Mayan descent. In 2013, two members of a gang known as "Mara 18" stopped Alvarez-Lajuj while he was walking to school and interrogated him. The members told Alvarez-Lajuj that they knew where he lived and where he went to school, and that the gang would kill him if he did not join their ranks. While the gang members did not explicitly tell Alvarez-Lajuj that they had targeted him based on his indigenous ethnicity, Alvarez-Lajuj believes the gang specifically seeks to recruit indigenous individuals due to their lack of work opportunities and diminished protection from the police in Guatemala. Alvarez-Lajuj was not physically harmed during the encounter (hereinafter "the 2013 incident"), but he feared a second run-in with the Mara 18 gang and left Guatemala in the fall of 2013, entering the United States without inspection.

U.S. immigration officials apprehended Alvarez-Lajuj shortly after his arrival and removed him to Guatemala. In early 2014, Alvarez-Lajuj again entered the United States without inspection. He settled in Philadelphia, Pennsylvania. On February 5, 2019, following Alvarez-Lajuj's arrest in Philadelphia for simple assault, Department of Homeland Security ("DHS") officials took him into custody and detained him at York County Prison. DHS reinstated the removal order and provided Alvarez-Lajuj with a credible fear interview. The officials determined that Alvarez-Lajuj had exhibited a

credible fear of persecution or torture and therefore referred him to withholding-only proceedings before an immigration judge.

Before the Immigration Judge ("IJ"), Alvarez-Lajuj applied for statutory withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture ("CAT"), 8 C.F.R. §§ 1208.16(c), 1208.18. Alvarez-Lajuj claimed that he feared returning to Guatemala because he and his family members have experienced discrimination based on their indigenous ethnicity. Alvarez-Lajuj also noted that after he left the country, Guatemalan gangs unrelated to Mara 18 killed two of his aunts—both of whom owned businesses— and two other relatives. Alvarez-Lajuj testified that all four relatives were killed for failing to make extortion payments. Alvarez-Lajuj feared that if he were to return to Guatemala, Mara 18 gang members would kill him for his prior refusal to join the group, or that the criminals who killed his aunts would also target him.

The IJ found that Alvarez-Lajuj had testified credibly but denied both of his applications on the merits. As for his withholding of removal application, the IJ determined that Alvarez-Lajuj did not establish that his alleged harm rose to the level of past persecution. The IJ noted that Alvarez-Lajuj was not physically harmed during the incident with the Mara 18 gang members, and that there was no evidence to suggest that he faced imminent harm upon return to Guatemala. The IJ pointed out that the Mara 18 gang did not follow up on the threat by returning to Alvarez-Lajuj's home or by targeting any members of his family.

3

The IJ also determined that Alvarez-Lajuj failed to establish a clear probability of persecution based on his ethnicity or political opinion. Although the IJ credited reports that indigenous people face mistreatment in Guatemala, the IJ highlighted that the Mara 18 gang members had not mentioned Alvarez-Lajuj's ethnicity during the 2013 incident. The IJ acknowledged the tragic nature of the killings of Alvarez-Lajuj's relatives by Guatemalan gangs but found a lack of evidence to suggest that those murders were either motivated by the family members' ethnicity or related to the 2013 incident. Instead, the IJ explained, the murders resulted from extortion. The IJ concluded that Alvarez-Lajuj failed to show that the Guatemalan government would be unable or unwilling to protect him from harm inflicted by private actors, and that he could not reasonably relocate within Guatemala to avoid future persecution.

Along with rejecting his application for withholding of removal, the IJ denied Alvarez-Lajuj's application for CAT protection. Alvarez-Lajuj's claim hinged on two series of hypothetical events: that Mara 18 gang members would discover that he was back home, find him, and act on their prior threat, or that the criminals who killed Alvarez-Lajuj's family members would learn of his existence and target him. The IJ found that Alvarez-Lajuj failed to show that it was more likely than not that either the government or a private actor would torture him in Guatemala. In coming to that finding, the IJ noted that Alvarez-Lajuj had not faced torture in the past and that he failed to show that individuals such as the Mara 18 members would seek to torture him six years later. The IJ therefore denied his application, concluding that he had failed to meet his burden of proof.

Alvarez-Lajuj appealed from the IJ's decision and the BIA dismissed the appeal. The Board also agreed with the IJ's determination that Alvarez-Lajuj failed to meet his burden of proof for withholding of removal. The Board agreed with the IJ's finding that the past harm did not rise to the level of past persecution and found no clear error in the IJ's conclusion that Alvarez-Lajuj does not face a clear probability of persecution based on his ethnicity or political opinion. The Board noted that the Mara 18 gang members had not referred to a protected class or social group during the 2013 incident and there was no evidence in the record tying the murders of Alvarez-Lajuj's family members to him or the 2013 incident. The Board also embraced the IJ's denial of Alvarez-Lajuj's application for CAT protection, finding no clear error in the IJ's determination that Alvarez-Lajuj had failed to show that it was more likely than not that he would face torture if removed to Guatemala. This petition for review followed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. § 1208.31(e), which grants the Board jurisdiction to review decisions by immigration judges in withholding-only proceedings. We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review final orders of removal. *See Cazun v. Att'y Gen.*, 856 F.3d 249, 254 n.9 (3d Cir. 2017).

We review the BIA's denial of statutory withholding of removal, including the Board's factual findings about whether harm rises to the level of persecution and occurs because of a protected ground, for substantial evidence. *See Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 131 (3d Cir. 2009); *Jarbough v. Att'y Gen.*, 483 F.3d 184, 191 (3d Cir. 2007). We will uphold the agency's finding "unless any reasonable adjudicator would be

5

compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B).  In reviewing the

BIA's denial of CAT protection, we also review the agency's factual findings, including

the finding of whether torture is more likely than not to occur, for substantial evidence.

*See Kang v. Att'y Gen.*, 611 F.3d 157, 163-68 (3d Cir. 2010).  The Court reviews de novo

whether the agency properly analyzed the applicant's CAT protection claim.  *See*

*Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019).

## III.    DISCUSSION

Alvarez-Lajuj argues that the BIA erred in failing to find that he suffered past

persecution based on his Achi Mayan ethnicity and in determining that he did not show

that there is a clear probability that he will endure persecution in the future because of his

ethnicity.  Alvarez-Lajuj also challenges the BIA's conclusion that he was ineligible for

protection under the Convention Against Torture.

### A.    WITHHOLDING OF REMOVAL

We agree with the BIA's determination that Alvarez-Lajuj failed to meet his

burden of proof for withholding of removal.  *See* 8 C.F.R. § 1208.16(b).

To establish eligibility for withholding of removal under the Immigration and

Nationality Act, an applicant must show that, "if returned to his country, it is more likely

than not that the alien's life or freedom would be threatened on account of race, religion,

nationality, membership in a particular social group, or political opinion." *Amanfi v.*

*Ashcroft*, 328 F.3d 719, 726 (3d Cir. 2003).  If the applicant establishes that they have

experienced past persecution, there is a rebuttable presumption that future persecution

will occur for the same reason.  *See* 8 C.F.R. § 1208.16(b)(1)(i); *see also Gonzalez-*

6

*Posadas v. Att'y Gen.*, 781 F.3d 677, 684 (3d Cir. 2015). If the applicant fails to show past persecution, he bears the burden of proving a clear likelihood of future persecution. *See* 8 C.F.R. § 1208.16(b)(2); *see also Gonzalez-Posadas*, 781 F.3d at 687.

Substantial evidence supported the BIA's determination that Alvarez-Lajuj failed to show past persecution or a clear probability of future persecution in Guatemala. This Court "ha[s] limited the types of threats constituting persecution to only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm." *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 341 (3d Cir. 2008) (quoting *Chavarria v. Gonzalez*, 446 F.3d 508, 518 (3d Cir. 2006)). "We have further defined acceptable threats to include only those that are highly imminent[.]" *Chavarria* 446 F.3d at 518. Alvarez-Lajuj did not establish that Mara 18's one-time oral threat, made six years ago, represented a highly imminent danger. *See Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir. 2005) ("We agree that unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution."). While the threat was no doubt troubling, Alvarez-Lajuj was not physically harmed during the incident, and Mara 18 did not follow up on the threat by returning to his home or targeting any of his family members. We therefore believe that Alvarez-Lajuj was not entitled to a rebuttable presumption of future persecution.

Thus, Alvarez-Lajuj needs to show a clear likelihood that he would face persecution in the future in Guatemala. We agree with the BIA's conclusion that Alvarez-Lajuj did not establish that he would more likely than not face future harm because of his ethnicity or political opinion. During the 2013 incident, the Mara 18 gang

7

members did not reference Alvarez-Lajuj's indigenous ethnicity or his political beliefs. And there was no evidence in the record tying the murders of Alvarez-Lajuj's family members to him or the 2013 incident. As Alvarez-Lajuj admitted, the criminals' motive in harming his relatives was to receive extortion money.[1] Alvarez-Lajuj stated generally that gangs often target people whom they perceive to have money, which is not a protected ground. *See Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007) (affirming order of removal where criminal gang that targeted petitioner "was motivated by a bare desire for money, not by political opinion or by hostility to [his] family"). Alvarez-Lajuj has not shown that the non-Mara 18 affiliated criminals targeted his family members based on a protected characteristic. For these reasons, Alvarez-Lajuj failed to meet his burden of proof for establishing statutory withholding of removal.[2]

## B. CONVENTION AGAINST TORTURE

---

[1] Importantly, nothing in the record supports the notion that the criminals alluded to regarding the murders of Alvarez-Lajuj's family members have any connection to Mara 18.

[2] Alvarez-Lajuj argues that two additional findings by the IJ—that Alvarez-Lajuj failed to show that the government of Guatemala is unwilling or unable to provide protection to him and failed to establish that he cannot reasonably relocate within Guatemala to avoid future threats or harm—were "in clear error." Pet'r's Br. 20-21. But the BIA did not reach those findings. *See* J.A. 6 ("Because we agree with the Immigration Judge's determination that the applicant is not eligible for withholding of removal based on [his inability to show past persecution or a clear probability of future persecution], we need not also address whether the applicant established that the government of Guatemala is unable or unwilling to protect him or whether he could not reasonably relocate within Guatemala."). We therefore do not inquire into the IJ's investigation and evaluation as to these two issues. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

We also find that substantial evidence supported the agency's denial of CAT protection.

To qualify for relief under the Convention against Torture, an individual must establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 268 (3d Cir. 2010). Torture is defined as "an extreme form of cruel and inhuman treatment that does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). Likelihood of future torture is "a mixed question of law and fact" which requires "the IJ [to] address two questions: '(1) what is likely to happen if the petitioner is removed; and (2) does what is likely to happen amount to the legal definition of torture?'" *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quoting *Kaplun*, 602 F.3d at 271).

Although the IJ failed to expressly apply this standard, we need not remand here because it would be futile to do so. *See Kang*, 611 F.3d at 168. Alvarez-Lajuj failed to show that he would more likely than not face torture in Guatemala. Alvarez-Lajuj has no history of facing torture. Moreover, Alvarez-Lajuj did not establish that the Mara 18 gang members who threatened him in 2013 still had an interest in him or were likely to target him again. *See Matter of J-F-F-*, 23 I. & N. Dec. 912, 917-18 (A.G. 2006) (if an applicant fears torture based on a speculative chain of events, he must show that each event is more likely than not to occur). Additionally, Alvarez-Lajuj did not show that the criminals, unaffiliated with Mara 18, who harmed his family members in separate

9

incidents sought to harm him.  We therefore agree with the BIA that Alvarez-Lajuj is ineligible for protection under CAT.[3]

## IV.  CONCLUSION

For the foregoing reasons, we will deny the petition for review.

---

[3] Before briefing on appeal, the Government, while not conceding error, requested a remand to permit the BIA to explicitly "determine whether, as a matter of law, Petitioner Edvin Alvarez-Lajuj would experience harm amounting to the legal definition of torture if removed to Guatemala." (Mot. to Remand at 1.)  The Government has withdrawn its motion and we agree that remand is unnecessary. *See Kang*, 611 F.3d at 167-68 ("While ordinarily the proper course, except in rare circumstances, is [for an appellate court] to remand to the agency for additional investigation or explanation, [w]here application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.") (citations and quotation marks omitted).  The BIA agreed with the IJ's factual finding that Alvarez-Lajuj was unlikely to experience any harm under any protected category.  *See* J.A. 6 ("We . . . agree with the Immigration Judge's determination that the applicant did not establish a clear probability of persecution."); *see also id.* ("[W]e find no clear error in the Immigration Judge's finding that the applicant will not more likely than not be tortured upon his return to Guatemala.") Because the BIA found that no harm was likely, it did not have to state explicitly the clear logical conclusion that Alvarez-Lajuj had established no likelihood of being tortured.